IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN RE: JAY AUBREY MILLER, ) | |
| SHIRLEY ANN MILLER, ) | |
| ) | CASE NO. 15-11394 |
| DEBTOR. ) | Chapter 7 |
| ) | |
| | |
| ALLY FINANCIAL, INC., ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| vs. ) | ADVERSARY NO. 15-01236 |
| ) | |
| JAY AUBREY MILLER, ) | |
| SHIRLEY ANN MILLER, ) | |
| J. MILLER TRUCKING, INC., ) | |
| DEBORAH H. HUPFER, ) | |
| COLLATERAL SERVICES OF ) | |
| INDIANA, INC., ) | |
| FENNER AND ASSOCIATES, ) | |
| BRIAN FENNER, AND ) | |
| FRANCIS LENNEX, ) | |
| ) | |
| DEFENDANTS. ) | |

**PLAINTIFF'S RESPONSE TO**
**DEFENDANTS MOTION TO DISMISS**

Plaintiff, Ally Financial Inc. ("Ally"), for its response to the Motion to Dismiss by Defendants, Collateral Services of Indiana, LLC., Fenner and Associates, Brian Fenner and Francis Lennex, for lack of jurisdiction, objects to the motion and states:

1.      Plaintiff initiated this adversary proceeding in order to address a problem that has developed on a national scale, has had a detrimental effect upon the

1

administration of bankruptcy proceedings and is an assault on the very purpose of the bankruptcy court.

1. Plaintiff's Complaint includes claims seeking a denial of a discharge of Defendants, Jay Aubrey Miller and Shirley Ann Miller, pursuant to 11 U.S.C. Section 727(a)(2)(A); damages for tortious Interference with contract against Defendants Deborah H. Hupfer, Collateral Services of Indiana, LLC, Fenner and Associates, Brian Fenner, and Francis Lennex; and damages for against all Defendants for Conspiracy to Commit Fraud in relation to the bankruptcy case and property of the estate.

2. Defendants Collateral Services of Indiana, LLC, Fenner and Associates, Brian Fenner, and Francis Lennex have now mirrored the motion of Defendant Deborah H. Hupfer to dismiss the complaint asserting lack of subject matter jurisdiction and further asserting that the complaint is not a core proceeding under the Bankruptcy Code.

3. In the case at hand, the Debtors and their counsel, Deborah H. Hupfer, made the decision to plan Debtors' bankruptcy filing in such a manner as to arrange contracts with Collateral Services of Indiana (through Defendants Fenner and Associates, Brian Fenner, and Francis Lennex) that provided money for Debtors and placed liens on Debtors' vehicles which are property of the estate. Pursuant to that scheme, the Debtors after consultation with the Deborah H. Hupfer, signed a series of Transporting and Storage Authorization Agreements ("TSAA"). Those agreements resulted in the Debtors granting possession of six items of personal property comprised of vehicles, trailers. tractors and a boat (collectively referred to as the "Vehicles") to Collateral Services of Indiana with the understanding that Collateral Services of Indiana would move the

Vehicles outside of this judicial district and the State of Oklahoma to Indiana, charge (a) a Preventative Maintenance Care Package charge of $1,950.00, (b) transportation charges of $.85 per mile, (c) storage charges of $35.00 per day, (d) a $45.00 load fee, (e) a $45.00 unload fee, and (f) a late fee of 10% of the monthly storage fee (debts that neither Defendants, including Collateral Services of Indiana and the Debtors, ever expected the Debtors to ever pay).

4.  The reason the Debtors were not ever expected to pay these inflated charges is apparent from the fact that within a month, Collateral Services of Indiana had moved the Vehicles to Indiana and run up charges on the Vehicles in tens of thousands of dollars[1]. Furthermore, Collateral Services of Indiana had already paid Debtors' Counsel, the Movant, upon the signing of the TSAA's the sum of $2,500.00 to file Debtors' chapter 7 case.

5.  Instead of realistically expecting the Debtors to pay the debt under the TSAA's, Collateral Services of Indiana expected to make its money moving and storing the vehicles, fraudulently asserting the Vehicles had been abandoned, asserting a transportation and storage lien thereon, and requiring Debtors' secured creditors to pay those charges in order to redeem their collateral. Collateral Services of Indiana undertook this effort by noticing sales of the Vehicles (property of the estate) in violation of the automatic stay (11 U.S.C. §362). In this regard, Ally Financial anticipates adding

---

[1] The total debt imposed by Collateral Services of Indiana on all the Vehicles approaches $30,000.00.

claims against Collateral Services of Indiana and other defendants for violation of the automatic stay.

6.	The purpose of the Bankruptcy Code is to provide the honest, but unfortunate, debtor a fresh start. *Grogan v. Garner,* 498 U.S. 279, 286-87, 111 S.Ct. 654, 659–60, 112 L.Ed.2d 755 (1991). Here, the Debtors, their counsel, and Movants did not begin this case with honesty.  There is no justification for entering into the TSSA's, no reason to have the Vehicles transported to Indiana to create fraudulent liens thereon (especially when the creditors would have eagerly recovered the collateral from Debtors in Oklahoma), no reason for the Movant to receive $2,500.00 for a simple chapter 7 case, and no reason for Collateral Services of Indiana to benefit in the amount of approximately $30,000.00 for services that were neither necessary nor reasonable.

7.	Movants assert that the Complaint against them should be dismissed because the claims involved are traditional state court tort claims, that this court lacks jurisdiction under  28 U.S.C. §157(b)(3) and that they have not consented to jurisdiction under FRBP Rule 7008.  Movant's arguments are misplaced.

8.	Here, Movants has engaged in practices with are directly involved with the administration of the bankruptcy case. They paid funds to Debtor's counsel to file this case, entered into the TSAA transactions which were used to pay attorney's fees and abused the bankruptcy process for their own personal gain and benefit and to the detriment of Plaintiff and other creditors similarly situated who have interest in the property of the estate affected by Defendants' wrongful conduct.

9.     Ally, as a secured creditor with a lien on property of the estate, has a right to the proper administration of the property of the estate in such a manner as to protect Ally's interest in the estate property.  Just as Ally is stayed by virtue of 11 U.S.C. Section 362 from taking any action against its collateral in order to permit the Bankruptcy Court to control the administration of estate assets, Ally has a right to know that the Court will ensure the protection of its interests from others who are violating 11 U.S.C. Section 362 and using fraud to adversely affect property of the estate and destroy the very essence of the bankruptcy process.

10.    Payment of Debtors' attorneys' fees is a core matter. 157(b)(2)(A),(B), and (O). The administration of property of the estate is a core matter. 157(b)(2)(A), (E), (N) and (O). Also, Collateral Services of Indiana attempt to liquidate the Vehicles[2] in violation of Section 362 is a core matter. 157(b)(2)(G).  Finally, the determination of the objection to discharge is also core matter. 157(b)(2)(J).

11.    Section 157 confines the bankruptcy courts' statutory authority to enter final judgments to "core" bankruptcy matters.[3] The term "core" as it is used in § 157 has no

---

[2] Ally's collateral was liquidated in violation of the automatic stay and Ally is undertaking discovery to see if any other affected secured creditors' collateral was also sold by Collateral Services of Indiana in violation of the automatic stay.

[3] Section 157(b) provides statutory authority for bankruptcy courts to enter final judgments in core bankruptcy matters and subsection (b)(2) lists examples of core matters:
(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.
(2) Core proceedings include, but are not limited to—
(A) matters concerning the administration of the estate;
(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

intrinsic meaning or significance. It can only be understood by reference to the list of examples of core proceedings that appears in § 157(b)(2) and by reference to Supreme Court cases that explore the limits of bankruptcy court authority. *See, e.g., Northern Pipeline Const. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 71, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) ("[T]he restructuring of debtor-creditor relations ... is at the core of the federal bankruptcy power...." ). A core bankruptcy matter, generally speaking, is one that is integrally related to the restructuring of the debtor-creditor relationship. *Langenkamp v. Culp,* 498 U.S. 42, 44–45, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990); *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 54–55, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989).

12. Because a bankruptcy court's authority to enter final judgments is limited to core matters, those matters that are simply "related to" a bankruptcy case but are not "cases under title 11" or "core proceedings arising under title 11, or arising in a case under title 11" are excluded. 28 U.S.C. § 157(b)(1). The district courts may enter final

---

(C) counterclaims by the estate against persons filing claims against the estate;
(D) orders in respect to obtaining credit;
(E) orders to turn over property of the estate;
(F) proceedings to determine, avoid, or recover preferences;
(G) motions to terminate, annul, or modify the automatic stay;
(H) proceedings to determine, avoid, or recover fraudulent conveyances;
(I) determinations as to the dischargeability of particular debts;
(J) objections to discharges;
(K) determinations of the validity, extent, or priority of liens;
(L) confirmations of plans;
(M) orders approving the use or lease of property, including the use of cash collateral;
(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;
(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and
(P) recognition of foreign proceedings and other matters under chapter 15 of title 11.
28 U.S.C. § 157(b).

6

judgments in those non-core bankruptcy related matters but the bankruptcy courts may not. 28 U.S.C. § 157(c)(1).

13. *Stern v. Marshall,* 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011), addresses the interaction between the federal district courts and the bankruptcy courts. The fact that a controversy is controlled by state law is insufficient, in and of itself, to remove the matter from the core of federal bankruptcy jurisdiction and deprive a bankruptcy court of authority, under 28 U.S.C. § 157(b), as limited by *Stern,* to enter a final judgment. Section 157 provides that "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3).

14. Other courts that have addressed the impact of section 105 on situations such as this have found that administration of disputes with transportation and storage lien claimants against property of the estate is a core matter. *In Re: McCann*, SNDY (2015), (Exhibit "A") and *In Re: Parsons,* SDNY (2015) (Exhibit "B").

15. Even in the event a case is for some reason determined to be non-core and the bankruptcy court may not enter a final judgment in that case, this fact does not preclude the bankruptcy case from hearing the matter and referring it to the District Court to enter a final judgment. Motions for withdrawal of reference are governed by 28 U.S.C. § 157(d) ( "Section 157(d)"), Rule B–6 of the District Court Rules, and Rule 5011 of the Federal Rules of Bankruptcy Procedure. Section 157(d) provides—

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for

7

cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

16. Here, in the event this court determines that any of Ally's claims are none-core matters, that the court permit Ally to seek withdraw of the reference so as to permit this proceeding to be administered by this court in conjunction with the United States District Court for the Western District of Oklahoma.

17. On a final note, Defendants have raised the fact that the Plaintiff filed a civil suit in the State of Indiana to recover its collateral. However, that action does not preclude the action filed by Plaintiff herein. Furthermore, in an act inconsistent with their pleas herein to administer the claims elsewhere, Defendants have sought to stay the Indiana action based upon the filing of this action.

Wherefore, Plaintiff, Ally Financial Inc. prays that this court deny Defendants' Motion to Dismiss, or in the alternative, permit Ally to withdraw the reference so as to permit this proceeding to be administered by this court in conjunction with the United States District Court for the Western District of Oklahoma.

KIVELL, RAYMENT & FRANCIS, PC
A Professional Corporation

By: *s/Brian J. Rayment*
Brian J. Rayment, OBA #7441
Triad Center, Suite 550
7666 E. 61st Street
Tulsa, OK 74133
Ph.: (918) 254-0626, x205

Fax: (918) 254-7915
Email: brayment@kivell.com

Attorneys for Plaintiff
Ally Financial Inc.

## CERTIFICATE OF SERVICE

I, Brian J. Rayment, hereby certify that on the 13th day of November 2015, a true and correct copy of the above and foregoing instrument was served using the Court's ECF System upon the following parties:

Jerry D. Brown on behalf of Defendant Deborah Hoover Hupfer, c/o jdbrownpc@sbcglobal.net, jdbrown341@sbcglobal.net; jdbrown@oklahoma.net

Stephen A Harry on behalf of Defendants FENNER AND ASSOCIATES, COLLATERAL SERVICES OF INDIANA, LLC, BRIAN FENNER, FRANCIS LENNEX, c/o stephenaharry@sahlawoffice.com, steveaharry@yahoo.com

B David Sisson on behalf of Defendants Aubrey Jay Miller and Shirley Ann Miller, c/o sisson@sissonlawoffice.com

and via US Mail, postage prepaid to:

J Miller Trucking, Inc.
127 Sooner Rd
Shawnee, OK

*s/ Brian J. Rayment*
_____
Brian J. Rayment