**Dated: February 9, 2016**

**The following is ORDERED:**



Sarah A Hall
United States Bankruptcy Judge

_____

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| AUBREY JAY MILLER and | ) | Case No. 15-11394-SAH |
| SHIRLEY ANN MILLER, f/k/a Shirley Ann Herman, | ) | |
| | ) | Chapter 7 |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| ALLY FINANCIAL, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. Pro. 15-01236-SAH |
| | ) | |
| AUBREY JAY MILLER, SHIRLEY ANN MILLER, | ) | |
| J. MILLER TRUCKING, INC., DEBORAH H. HUPFER, | ) | |
| COLLATERAL SERVICES OF INDIANA, L.L.C., | ) | |
| FENNER AND ASSOCIATES, BRIAN FENNER, | ) | |
| and FRANCIS LENNEX, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART (I) MOTION TO
DETERMINE PROCEEDING IS NON-CORE AS TO DEFENDANT, DEBORAH
HOOVER-HUPFER, BRIEF IN SUPPORT, AND NOTICE OF OPPORTUNITY
FOR HEARING [DOC. 21] AND (II) MOTION TO DISMISS DUE TO LACK OF
JURISDICTION FOR DEFENDANTS COLLATERAL SERVICES OF INDIANA,
LLC. [SIC], FENNER AND ASSOCIATES, BRIAN FENNER AND FRANCIS LENNEX,
BRIEF IN SUPPORT AND NOTICE OF OPPORTUNITY FOR HEARING [DOC. 26]**

Before the Court are:

1.    Amended Complaint [Doc. 2] filed by Ally Financial, Inc. ("Ally") on July 22, 2015;

2.    Motion to Determine Proceeding is Non-Core as to Defendant, Deborah Hoover-Hupfer, Brief in Support, and Notice of Opportunity for Hearing [Doc. 21] (the "Hupfer Motion") filed by Deborah Hoover-Hupfer ("Hupfer") on October 14, 2015;

3.    Plaintiff's Response to Defendant Hupfer's Motion to Dismiss [Doc. 25] (the "Ally Response to the Hupfer Motion") filed by Ally on October 28, 2015;

4.    Motion to Dismiss Due to Lack of Jurisdiction for Defendants Collateral Services of Indiana, LLC. [sic], Fenner and Associates, Brian Fenner and Francis Lennex, Brief in Support and Notice of Opportunity for Hearing [Doc. 26] (the "CSI Motion") filed by Collateral Services of Indiana, L.L.C. ("CSI"), Fenner and Associates ("Fenner"), Brian Fenner ("B Fenner"), and Francis Lennex ("Lennex") on October 30, 2015;

5.    Plaintiff's Response to Motion to Dismiss [Doc. 27] (the "Ally Response to the CSI Motion") filed by Ally on November 13, 2015;

6.    Supplemental Brief in Support of "Motion to Determine Proceeding is Non-Core as to Defendant, Deborah Hoover-Hupfer" [Doc. 30] (the "Hupfer Supplement") filed by Hupfer on December 2, 2015;

7.    Supplemental Brief in Support of Motion to Dismiss Due to Lack of Jurisdiction for Defendants Collateral Services of Indiana, LLC. [sic], Fenner and Associates, Brian Fenner and Francis Lennex, Brief in Support and Notice of Opportunity for Hearing [Doc. 32] (the "CSI Supplement") filed by CSI , Fenner, B Fenner and Lennex on December 4, 2015; and

8.      Plaintiff's Sur-Reply in Response to Defendants' Motion to Dismiss [Doc. 36] (the "Ally Sur-Reply") filed by Ally on December 17, 2015.

## STANDARD OF REVIEW

Hupfer filed Defendant Deborah Hoover-Hupfer's Answer to Plaintiff's First Amended Complaint [Doc. 11] on August 24, 2015.  Hupfer's Answer raises the affirmative defense of lack of subject matter jurisdiction.  CST, Fenner, B Fenner and Lennex filed Defendants Collateral Services of Indiana, LLC., Fenner and Associates, Brian Fenner and Francis Lennex Answer to First Amended Complaint and Affirmative Defenses [Doc. 16] (the "CSI Answer") on October 7, 2015.  The CSI Answer raises the affirmative defense of lack of subject matter jurisdiction.  CSI Answer, at 5.  According to Fed. R. Civ. P. 12(b), made applicable to adversary proceedings by Fed. R. Bankr. P. 7012, the defense of lack of subject matter jurisdiction may be asserted by motion, but any such motion must raise that defense before an answer is filed. Fed. R. Civ. P. 12(b)(1).  The fact that Defendants answered before moving to dismiss for lack of subject matter jurisdiction is grounds for denying the requests for dismissal within the Hupfer Motion and the CSI Motion.  However, Ally did not make this argument and seems equally interested in a determination of whether their Amended Complaint presents core or non-core matters.  Moreover, because the Court cannot enter final orders on non-core matters under 28 U.S.C. § 157(c), this determination must be made irrespective of its procedurally defective presentation.  Since subject matter jurisdiction, in this instance, is a facial question, the Court considers it in the same manner as it would when faced with a properly-filed Rule 12(b)(1) motion.

-3-

Under Fed. R. Civ. P. 12(b)(1), made applicable to adversary proceedings by Fed. R. Bankr. P. 7012, a party may raise the affirmative defense that this Court lacks "jurisdiction over the subject matter" by motion. Such motions "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject-matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002). Depending upon which approach a defendant takes, this Court must apply differing standards of review.

When a party facially attacks the complaint's allegations concerning subject matter jurisdiction, the Court must consider the complaint's allegations to be true. See Ruiz, 299 F.3d at 1180; Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir.1981). If, instead, a party's arguments stretch beyond allegations in the complaint to challenge the actual facts upon which subject matter jurisdiction depends, then this Court may not presume the truthfulness of the allegations and has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. Holt v. United States., 46 F.3d 1000, 1003 (10th Cir. 1995) (citing Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990) and Wheeler v. Hurdman, 825 F.2d 257, 259 n.5 (10th Cir. 1987)). In the latter instance, despite reference to and consideration of evidence outside the pleadings, the Court need not convert the Rule 12(b)(1) motion to a Rule 56 motion. Holt, 46 F.3d at 1003; Wheeler, 825 F.2d at 259 n. 5.

Defendants do not mention Rule 12(b)(1) and they have already filed answers to the Amended Complaint, but their arguments constitute a challenge to this Court's subject matter jurisdiction. In sum, they argue that: (1) this is not a core proceeding; (2) the Bankruptcy Court lacks jurisdiction under Stern v. Marshall, 131 S.Ct. 2594 (2011), and its progeny; and (3) this

-4-

adversary proceeding should be dismissed.  Defendants do not challenge the truth of Ally's

factual allegations supporting its contention that this Court has subject matter jurisdiction.

Likewise, Defendants do not offer alternative factual contentions or evidentiary support for their

argument that this Court lacks subject matter jurisdiction. Consequently, Defendants' arguments

amount to facial challenges to the Court's subject matter jurisdiction that can be decided as a

matter of law. See, e.g., Sprague v. Williams (In re Van Winkle), 2016 WL 196981, *2 (Bankr.

D. N.M. Jan. 14, 2016) (unpub.) (citing In re Factory 2–U Stores, Inc., 2010 WL 3322448, *1

(Bankr. D. Del. 2010) (analyzing "arising under" jurisdiction as a facial challenge)); Smelcer v.

Citizens Bank of Kilgore (In re Hart Oil & Gas, Inc.), 534 B.R. 35, 43 (Bankr. D. N.M. 2015)

(Stern issues present a facial attack on the Court's subject matter jurisdiction); Bass v. Millican

(In re Telemarketing Commc'n), 95 B.R. 794, 795 (Bankr. D. Colo. 1989) (defendant's assertion

that Court lacked jurisdiction over "non-core" proceedings was a facial attack on jurisdiction).

**FACTUAL ALLEGATIONS GERMANE TO THE RESOLUTION OF THE MOTIONS**

Aubrey Jay and Shirley Ann Miller (collectively, "Debtors") filed their Voluntary Petition

[Doc. 1] in Case No. 15-11394 (the "Bankruptcy Case") on April 16, 2015.  On July 22, 2015,

Ally filed its Amended Complaint [Doc. 2] asserting three causes of action.  First, under 11

U.S.C. § 727(a)(2)(A), the Complaint alleges that Debtors, with the intent to hinder, delay or

defraud Ally, transferred the Collateral (defined below) - including Ally's collateral, a 2013

Dodge Ram 4500 truck (the "Ram"), jointly owned by J. Miller Trucking, Inc. ("JM Trucking")[1]

and Shirley Miller - outside the State of Oklahoma where it was sold free and clear of Ally's lien

during the pendency of their Bankruptcy Case.  Second, Ally alleges that Hupfer, CSI, Fenner, B

_____

[1]Debtors own JM Trucking.

Fenner and Lennex tortiously interfered with Ally's contract with Debtors by conspiring with Debtors and facilitating the transfer for their own personal financial benefit (the "Tortious Interference Claim").  Third, Ally alleges that all Defendants conspired to commit fraud against Ally (the "Conspiracy Claim" together with the Tortious Interference Claim, the "State Law Claims").

The facts supporting each cause of action are identical; therefore, the Court will provide a single summary before progressing to its jurisdictional analysis of the State Law Claims.[2] According to the Complaint, Debtors own JM Trucking.  On June 12, 2013, JM Trucking and Shirley Ann Miller purchased the Ram.  Ally financed the purchase of the Ram and properly perfected its first priority security interest therein.  Under the terms of their agreement with Ally, beginning on July 27, 2013, JM Trucking and Shirley Ann Miller were obligated to pay Ally $816.77 per month for 72 months.  JM Trucking and Shirley Ann Miller defaulted on their obligations to Ally pre-petition.

Shortly thereafter, and also pre-petition, Debtors, with the aid of their counsel, Hupfer, entered into a series of Transporting and Storage Authorization Agreements (the "Transport Agreements") with CSI[3] (together with Debtors, Hupfer and Fenner,[4] the "Contracting Parties").  In exchange for cash payments, Debtors granted lien and possessory interests in six (6) pieces of

---

[2]Debtors do not - and could not - contest that this Court has the core jurisdiction to enter final orders concerning a Section 727(a)(2)(A) claim.  28 U.S.C. § 157(b)(2)(J).

[3]B Fenner and Francis Lennex own and operate CSI.

[4]B Fenner owns and operates Fenner.

collateral, including the Ram,[5] other vehicles, trailers, tractors and a boat (collectively, the "Collateral") that would become estate property.  When they entered into the Transport Agreements, Debtors knew that CSI was going to transport the Collateral to Indiana, then charge Debtor's secured lienholder(s) with priority (i) $1,950.00 under a Preventive Maintenance Care Package, (ii) $0.85 per mile for transportation costs, (iii) $35.00 per day for storage, (iv) $45.00 for loading the Collateral, (v) $45.00 for unloading the Collateral, and (vi) ten (10) percent of the storage fees as a late fee (collectively, the "Fees").

Although the Fees technically were imposed upon Debtors, the Contracting Parties understood that Debtors would not be obligated to compensate CSI.  Instead, the Transport Agreements were a fraudulent scheme under which Debtors received cash to pay Hupfer's attorney's fees, and CSI recouped its payments to Debtors and also profited when Debtors' secured creditors either redeemed the Collateral or declined to do so and CSI sold it.  As part of the scheme, CSI claimed that Debtors abandoned the Collateral to it.  CSI waited until post-petition, then noticed[6] the Collateral for sale and sold it in violation of the automatic stay. Debtors, meanwhile, remained silent and failed to take any action designed to prevent CSI's willful violations of the automatic stay, thus, in Ally's view, assenting to CSI's improper sale. Moreover, in Ally's telling, Debtors' failure to prevent the sale demonstrates their fraudulent intent and their status as co-conspirators.

---

[5]The date of the Transport Agreement covering the Ram was April 3, 2015; Debtors' Bankruptcy Case was filed on April 16, 2015.

[6]Post-petition, Ally received notice of the proposed sale, dated May 3, 2015, from CSI on or around May 11, 2015.

## THE PARTIES' POSITIONS

Hupfer argues that the matter is non-core because the "causes of action alleged by Ally do not fall within any of the provisions of § 157(b)(2)."[7]  Hupfer Motion, at 3.  The Hupfer Supplement adds that the claims against her arise solely under state law.  "When a 'claim is a state law action . . . and not necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy, it implicates private rights and thus is not amenable to final resolution by the bankruptcy court."  Hupfer Supplement, at 3 (citing Loveridge v. Hall (In re Renewable Energy Dev. Corp.), 792 F.3d 1274, 1279 (10th Cir. 2015) (quoting Stern v. Marshall, 131 S.Ct. 2594, 2611 (2011)).

CSI, Fenner, B Fenner and Lennex argue that the Amended Complaint must be dismissed for lack of jurisdiction.  In support, they cite a compendium of out-of-circuit cases pre-dating Stern, not for their underlying proposition that the case must be dismissed, but only for the implicit proposition that the matter is non-core.  They also discuss this Court's "related to" jurisdiction, then argue that, because a like state court suit predates this adversary proceeding and because they are not voluntary participants in Debtors' Bankruptcy Case or this adversary, the Amended Complaint against them should be dismissed.  In the CSI Supplement, they offer the conclusory argument that this is a state law action that does not affect the estate; therefore, it belongs in state court.  The CSI Supplement is silent as to why the Defendants' deliberate transportation of estate property in which a secured creditor holds a perfected lien and its

---

[7]The Court infers that Hupfer's reference to causes of action concerns some, but not all of Ally's causes of action and specifically, only those which reference Hupfer.  After all, the first cause of action alleges that Debtors' discharge should be denied under Section 727(a)(2)(A).  A proceeding to deny a debtor's discharge is a core proceeding.  28 U.S.C. § 157(b)(2)(J).

subsequent sale free and clear of such lien in violation of the automatic stay as part of an elaborate scheme to fund Debtors' counsel's fees has no bearing on the administration of the estate. The CSI Supplement also mentions that this Court may exercise its discretion to abstain, but stops short of requesting that the Court exercise is permissive abstention authority and is silent as to why abstention would be appropriate under the circumstances.

The Ally Response[8] argues that Defendants are being sued for taking actions that affect this Court's administration of the estate. In particular, Ally argues that (i) payment of attorney's fees, (ii) administration of estate property, (iii) adjudication of CSI's willful violation of the automatic stay, and (iv) whether Debtors' discharge should be denied are all core matters. Ally Response, at 4 (citing 28 U.S.C. § 157(b)(2)(A), (B), (E), (G), (N) and (O)). In support of this argument, Ally offers two points and one caveat. First, although the State Law Claims concern matters of state law, Stern v. Marshall, 131 S.Ct. 2594 (2011), does not stand for the proposition that, whenever a controversy is controlled by state law, it necessarily is non-core, because Section 157 states that "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." Ally Response, at 6 (quoting 28 U.S.C. § 157(b)(3)). Second, Section 105 of the Bankruptcy Code has bearing on this situation, in that another court has applied it in the course of finding that administration of disputes between secured creditors and transportation and storage lien claimants concerning estate property is a core matter. Ally Response, at 4 (citing In re McCann, 15-35045-CGM

---

[8]The Ally Response to Hupfer's Motion is identical to the Ally Response to CSI's Motion; therefore, the Court refers to both collectively as the "Ally Response."

(September 10, 2015 Bankr. S.D. N.Y.); In re Parsons, 15-30263-MCR (June 5, 2015 Bankr.

N.D. N.Y.) (slip op.)).

The Ally Sur-reply highlights its argument that the State Law Claims are core matters

concerning administration of the estate and explains that, even if the matter is actually non-core,

this Court should retain jurisdiction until a trial is held by the District Court and/or should offer a

report and recommendation subject to the District Court's *de novo* review and final order.[9]  In

support, Ally explains that Defendants have sought and obtained a stay of the similar, parallel

state court proceeding and now are attempting to also prevent this Court from hearing the matter.

---

[9]Ally also argues that by (i) entering their appearances in this adversary proceeding, (ii) asserting a lien claim, and (iii) selling estate property in violation of the automatic stay, CSI, Fenner, B Fenner and Lennex have consented to this Court's subject matter jurisdiction.  This hardly seems accurate, even when separating this consideration from the Supreme Court's holding that the Constitution prohibits this Court from entering final orders on the State Law Claims.  Loveridge, 792 F.3d at 1279 (quoting Stern, 131 S.Ct. at 2611) ("when a 'claim is a state law action . . . and not necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy,' it implicates private rights and thus is not amenable to final resolution in bankruptcy court.").  As this Court sees it, Defendants have promptly sought this Court's determination that this matter is non-core.  The Court arrives at its conclusion fully cognizant that the Supreme Court applies jurisdictional "waiver and forfeiture rules" even in "complex" cases, Stern, 131 S.Ct. at 2608 (quoting Exxon Shipping Co. v. Baker, 554 U.S. 471, 487-488, n.6, 128 S.Ct. 2605, 171 L.Ed.2d 570 (2008)), so this simpler case brooks no exception.  The Court is, likewise, attuned to the consequences of "a litigant . . . 'sandbagging' the court – remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor." Stern (quoting Puckett v. United States, 129 S.Ct. 1423, 1428-29 (2009) (some internal quotation marks omitted).  When a defendant believes that this Court lacks the authority to decide an adversary proceeding, he must promptly say so. Stern, 131 S.Ct. at 2608 (citing United States v. Olano, 507 U.S. 725, 731, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) ("'No procedural principle is more familiar to this Court than that a constitutional right,' or a right of any other sort, 'may be forfeited . . . by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it'" (quoting Yakus v. United States, 321 U.S. 414, 444, 64 S.Ct. 660, 88 L.Ed. 834 (1944))).

## ANALYSIS

Although this case has much to do with bankruptcy, Ally's forebearance of a claim of willful violation of the automatic stay[10] in favor of pursuing the State Law Claims places the action outside of this Court's core proceeding jurisdiction, but within the category of proceedings that are "related to" Debtors' bankruptcy case. Ally's claims against Defendants will not be resolved in the claims allowance process, and its claim against Hupfer, CSI, Fenner, B Fenner and Lennex arises purely under state law. "And to know that much is to know this case cannot be resolved in bankruptcy court. The . . . [C]ourt may offer a report and recommendation. But the parties are entitled by the Constitution to have an Article III judge make the final call." Loveridge, 792 F.3d at 1276-77. This is true because in Stern v. Marshall, 131 S.Ct. 2594 (2011), the Supreme Court repeatedly emphasized that, "when a 'claim is a state law action . . . and not necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy,' it

---

[10]Ally's arguments in support of this matter being a core proceeding are two-fold. First, two New York-based bankruptcy courts have determined that an action for willful violation of the automatic stay brought by a secured creditor against a storage lien holder for similar actions is a core proceeding and second, that attorney's fees are core matters. As to the first, certainly Ally could have chosen to pursue an action for willful violation of the automatic stay. Had it done so or even, instead, challenged CSI based upon relative priority, this Court would have concluded that such an action constituted a core proceeding. But, Ally elected to pursue state law claims that are merely related to Debtors' bankruptcy case. See Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 71, 102 S.Ct. 2858 (1982) (plurality opinion) (distinguishing "the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, . . . from the adjudication of state-created private rights"). Ally's second argument suggests that this action is core because Ally's Amended Complaint alleges that Hupfer's compensation is unusually high and is unjustified in the context of a chapter 7 case. Ally's argument elides the important difference between a factual allegation concerning the impropriety of Hupfer's compensation offered in support of a state law cause of action and a contested matter challenging Hupfer's compensation. Perhaps the distinction is trivial to Ally, but to this Court the distinction is the difference between a non-core proceeding and a core proceeding.

implicates private rights and thus is not amenable to final resolution in bankruptcy court."

Loveridge, 792 F.3d at 1279 (quoting Stern, 131 S.Ct. at 2611).

### A.    Ally's State Court Claims Do Not Constitute Core Proceedings.

In Stern, the Supreme Court resolved the tension between a bankruptcy court's

constitutionally-permissible jurisdictional authority and its more expansive statutory jurisdiction.

"The Constitution assigns '[t]he judicial Power' to decide cases and controversies to an

independent branch of government populated by judges who serve without fixed terms and

whose salaries may not be diminished."  Loveridge, 792 F.3d at 1277 (quoting U.S. Const. art.

III, § 1).  Despite the Constitution's general rule, over time the Supreme Court has recognized

three "narrow" situations in which persons otherwise entitled to a federal forum may wind up

having their dispute resolved by someone other than an Article III judge.  Northern Pipeline

Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 64, 102 S.Ct. 2858 (1982) (plurality

opinion).  Cases arising in the territories or the armed forces or those involving "public rights,"

including bankruptcy cases, may be sent to Article I tribunals of Congress's creation even if

decision-makers there do not enjoy the same insulation and independence as Article III judges.

Northern. 458 U.S. at 63-72.

Acting under Article I, Congress has vested bankruptcy courts with statutory jurisdiction

to hear cases referred by an Article III court.  Thus, bankruptcy courts' jurisdiction is derivative

not only of Article I, but also of those Article III powers which Congress authorizes an Article I

court to exercise and Article III does not, itself, prohibit.  As Stern explains, a bankruptcy court's

statutory reach exceeds its constitutionally-permissible grasp; therefore, the Supreme Court has

severed or modified certain statutory authorities, leaving to bankruptcy courts only those powers which do not run afoul of Article III's strictures.

Statutorily, 28 U.S.C. § 1334(a) grants federal district courts "original and exclusive jurisdiction of all cases under" the Bankruptcy Code. In placing all bankruptcy cases under federal district courts' jurisdiction,[11] Congress also subdivided bankruptcy proceedings into three (3) subcategories: "those that 'aris[e] under title 11'; those that 'aris[e] in' a Title 11 case; and those that are 'related to a case under title 11.'" Stern, 139 S.Ct. at 2603 (quoting 28 U.S.C. § 157(a)). A bankruptcy judge's authority to act in a given referred matter is a by-product of the type of proceeding involved. Bankruptcy judges may hear and enter final judgments in "all core proceedings arising under title 11, or arising in a case under title 11[,]" unless such a proceeding concerns a Stern claim,[12] such as a fraudulent transfer action arising under state law involving as a defendant a party who has not filed a claim against the bankruptcy estate. See 28 U.S.C. § 157(b)(1); see also Stern, 131 S.Ct. at 2611. "Core proceedings include, but are not limited to" 16 different types of matters. 28 U.S.C. § 157(b)(2).

Ally's tortious interference claim is not amongst the listed core proceedings, see 28 U.S.C. § 157(b)(2), and is not an unlisted core proceeding. See, e.g. Bokum Res. Corp. v. Long Island Lighting Co. (In re Bokum Res. Corp.), 49 B.R. 854, 857 (Bankr. D. N.M. 1985)

---

[11]Although federal district courts possess "original and exclusive jurisdiction," 28 U.S.C. § 1334(a), such courts may refer such proceedings to subordinate bankruptcy courts. Following referral, a case or adversary proceeding may be withdrawn to the district court "for cause shown." 28 U.S.C. § 157(d).

[12]A Stern claim is an otherwise core proceeding, having its foundations in common law, such that a party involved therein is entitled to a trial by jury before an Article III judge upon timely demand.

(surveying precedents and holding that a tortious interference with contract claim is a non-core

proceeding).  As further illustration, Section 157(b)(2)'s lengthy, but non-exhaustive list of core

proceedings, essentially includes "matters concerning the administration of the estate, orders

approving the sale of property, and other proceedings affecting the liquidation of the assets of the

estate." Plotner v. AT & T Corp., 224 F.3d 1161, 1172–1173 (10th Cir. 2000) (citing 28 U.S.C.

§ 157(b)).  In other words, core proceedings are defined as "proceedings which have no existence

outside of bankruptcy." Johnson v. Smith (In re Johnson), 575 F.3d 1079, 1082 (10th Cir. 2009).

A tortious interference with contract claim owes its existence to state common law.  While such

claim may impact a given bankruptcy case, as is alleged to be the case here, its existence

independent of bankruptcy precludes core treatment.

Similarly, claims for fraud and conspiracy to commit fraud are, likewise, non-core.

Walter v. Freeway Foods, Inc. (In re Freeway Foods of Greensboro, Inc.), 449 B.R. 860, 876

(Bankr. M.D. N.C. 2011) (citing Official Comm. of Unsecured Creditors of Wickes, Inc. v.

Wilson, No. 06 C 0869, 2006 WL 1457786 (N.D. Ill. May 23, 2006)).  Such claims do not

involve a substantive right provided by the Bankruptcy Code and are not, by their nature, claims

that could only arise in bankruptcy.  Freeway Foods, 449 B.R. at 876 (Bankr. M.D. N.C. 2011)

(citing Official Comm. of Unsecured Creditors of Wickes, Inc. v. Wilson, No. 06 C 0869, 2006

WL 1457786 (N.D. Ill. May 23, 2006)).  See also, Neckless v. Haws & Mill Street, Inc. (In re

Fusca), 2013 WL 2477268 (Bankr. D. Mass. 2013).

-14-

**B.    Ally's State Law Claims are Non-Core Matters That are "Related to" Debtors' Bankruptcy Case; Therefore, Defendants' Arguments for Dismissal Lack Any Merit.**

"Non-core proceedings are other matters 'related to' the bankruptcy case." Plotner, 224 F.3d at 1173.  Such "actions do not depend on the bankruptcy laws for their existence and . . . could proceed in another court." Johnson, 575 F.3d at 1082.  If a proceeding is non-core, "but . . . is otherwise related to a case under title 11," a bankruptcy judge may "submit proposed findings of fact and conclusions of law to the district court," and the district court may enter its final judgment following its *de novo* review.  Stern, 139 S.Ct. at 2604 (quoting 28 U.S.C. § 157(c)(1)).    But, what is "related to" a bankruptcy case?  Congress refrained from answering this question, nevertheless, the Supreme Court inferred from its choice of words "a grant of some breadth." Celotex Corp. v. Edwards, 514 U.S. 300, 307-08 (1995).  The Edwards court endorsed the Third Circuit's approach, as announced in Pacor, Inc. v. Higgins, 743 F.2d 984 (3[d] Cir. 1984), which held that "'Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate,' Pacor, 743 F.2d at 994; see also H.R.Rep. No. 95-595, pp. 43-48 (1977), and that the 'related to' language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simple proceedings involving the property of the debtor or the estate." Edwards, 514 U.S. at 308.  The Edwards court similarly endorsed the Pacor panel's observation that "'related to' jurisdiction cannot be limitless." Id. (citing Pacor, 743 F.2d at 994; cf. Board of Governors, FRS v. CORP. Financial, Inc., 502 U.S. 32, 40, 112 S.Ct. 459, 464, 116 L.Ed.2d 358 (1991) (stating that Congress has vested "limited authority" in bankruptcy courts)).  Finally, aside from endorsing the Pacor approach, the Supreme Court

cautioned that the jurisdiction of bankruptcy courts may extend more broadly in a chapter 11 reorganization than in a chapter 7 liquidation case. Edwards, 514 U.S. at 310; cf. Continental Ill. Nat. Bank & Trust Co. v. Chicago, R.I. & P.R. Co., 294 U.S. 648, 676, 55 S.Ct. 595, 606, 79 L.Ed. 1110 (1935).

The Tenth Circuit also endorses and utilizes the Pacor test. According to Pacor, "the test for determining whether a civil proceeding is related in bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." Gardner v. United States (In re Gardner), 913 F.2d 1515, 1518 (10th Cir. 1990)[13] (quoting Pacor, 743 F.2d at 994 (internal emphasis omitted)). Under the Pacor test, a proceeding does not have to be against the debtor or his property; it is "related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action in any way, thereby impacting on the handling and administration of the bankruptcy estate." Gardner, 913 F.2d at 1518 (citing Pacor Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)); see also Wood v. Wood (In re Wood), 825 F.2d 90, 93 (5th Cir. 1987) (related matters conceivably have effect on administration of bankruptcy estate); Dogpatch Prop., Inc. v. Dogpatch U.S.A., Inc. (In re Dogpatch U.S.A., Inc.), 810 F.2d 782, 786 (8th Cir. 1987) (same); Bobroff v. Continental Bank (In re Bobroff), 766 F.2d 797, 802 (3d Cir. 1985) (same)).

The status of property affects the "related to" jurisdictional analysis. At the beginning of a bankruptcy case, a bankruptcy court "has jurisdiction over disputes regarding alleged property

_____

[13]The Pacor test is uniformly applied in the Tenth Circuit to date. See, e.g. Smelcer, 534 B.R. at 44 (Bankr. D. N.M. 2015); Midwest Motor Supply Co., Inc. v. Hruby (In re Hruby), 512 B.R. 262, 268 (Bankr. D. Colo. 2014); Santander Consumer, USA, Inc. v. Houlik (In re Houlik), 481 B.R. 661, 674 (10th Cir. BAP 2012).

of the bankruptcy estate." <u>Gardner</u>, 913 F.2d at 1518 (citing <u>In re Xonics, Inc.</u>, 813 F.2d 127, 131 (7th Cir. 1987)).  But, once property is no longer a part of the bankruptcy estate, the bankruptcy court ordinarily loses its jurisdiction over such property.  <u>Gardner</u>, 913 F.2d at 1518 (citing <u>In re Hall's Motor Transit Co.</u>, 889 F.2d 520, 523 (3d Cir. 1989) (holding that the property's relationship to the bankruptcy proceeding comes to an end); <u>In re Xonics</u>, 813 F.2d 127, 131 (7th Cir. 1987); <u>In re Muller</u>, 72 B.R. 280, 284 (C.D. Ill. 1987), <u>aff'd</u>, 851 F.2d 916 (7th Cir. 1988), <u>cert. denied</u>, 490 U.S. 1007, 109 S.Ct. 1645, 104 L.Ed.2d 160 (1989)).  "Thus, the bankruptcy court lacks related jurisdiction to resolve controversies between third party creditors which do not involve the debtor or his property unless the court cannot complete administrative duties without resolving the controversy." <u>Gardner</u>, 913 F.2d at 1518 (citing <u>In re Shirley Duke Assocs.</u>, 611 F.2d 15, 18 (2d Cir. 1979)).

Defendants argue that the Amended Complaint against them should be dismissed because this Court lacks subject matter jurisdiction.  In support, they claim that this Court's "related to" jurisdiction does not reach the circumstances alleged by Ally.  In other words, when Debtors and their counsel conspire with third parties to grant transportation and storage liens on encumbered property of the estate - property that neither needed to be transported outside of this State nor stored pre-petition - in order to obtain funds to pay bankruptcy counsel fees of at least double the market rate for a chapter 7 case, and then the transportation and storage lienholder sells the property free and clear of the secured lien in violation of the automatic stay, such actions are unrelated to Debtors' bankruptcy.  Unsurprisingly, Defendants did not offer up any cases - let

alone, controlling authorities - involving similar facts in which a bankruptcy or appellate court found that such activities are unrelated to a given bankruptcy case.[14]

The Court unequivocally disagrees with Defendants.  The outcome of the State Court Claims "could conceivably have an[] effect on the estate being administered in bankruptcy." Gardner, 913 F.2d at 1518 (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)). Certainly, the Court's determination of the State Law Claims "could alter [Debtors' rights, liabilities, options, or freedom of action . . . thereby impacting on the handling and administration of the bankruptcy estate."  Gardner, 913 F.2d at 1518 (citing Pacor, 743 F.2d at 994).  At this stage, the Court does not know the market value of the Collateral, the amounts paid to date on the loans Debtors incurred to acquire the Collateral and whether there might be equity in the Collateral that belongs to the estate.  If it is determined that Defendants did, in fact, conspire to spirit estate property to another jurisdiction and sell it free and clear of liens and of the estate's claim to any equity, such findings and any consequences that naturally flow therefrom relate to the administration of Debtors' estate.  Moreover, the Collateral was sold in violation of the automatic stay and remains estate property.  Rushton v. Bank of Utah (In re C.W. Mining Co.), 477 B.R. 176, 192 (10th Cir. BAP 2012) (actions taken in violation of the automatic stay are void).  This suit, therefore, concerns estate property and is "related to" Debtors' bankruptcy case.

---

[14]The CSI Motion explained the standard that should be applied when considering whether a given action is "related to" a debtor's bankruptcy, but did not offer reasoned analysis of the Pacor test or apply it to the case at hand.  Moreover, although the Court gave Defendants an opportunity to supplement their Motions in order to ensure that their jurisdictional concerns could be given a full airing, or at least some basic explanation, Defendants offered unsupported conclusions.  See CSI Supplement, at 3 ("The state law claims made against these Defendants do not affect the bankruptcy estate and these claims are private rights and currently in state court action").

Likewise, if Hupfer conspired to cheat secured creditors out of the Collateral and the estate out of any potential surplus in order to gain above-market compensation for her representation of Debtors in their bankruptcy case and the administration of Debtors' bankruptcy estate, that, too, would seem to "relate to" Debtors' bankruptcy case.  In sum, the State Law Claims are "disputes regarding alleged property of the bankruptcy estate[;]" therefore, this Court has jurisdiction over Defendants.  Gardner, 913 F.2d at 1518 (citing In re Xonics, Inc., 813 F.2d 127, 131 (7th Cir. 1987)).

**C.      Defendants Neither Timely Demanded a Jury Trial Nor Moved for Withdrawal of the Reference; Therefore, the Court May Retain Jurisdiction Over the State Law Claims Until it Issues an Appropriate Report and Recommendation Concerning Final Disposition of the Case.**

Fed. R. Civ. P. 38(b), made applicable to adversary proceedings by Fed. R. Bankr. P. 9015, provides that a demand for a jury trial[15] must be made within 14 days after the last pleading directed to an issue is served.  Additionally, a demand for a jury trial in a bankruptcy proceeding is not complete until the party making the demand not only asks for a jury trial but also does whatever is necessary to bring the proceeding before a court that can conduct the jury trial the party wants.  Stainer v. Latimer (In re Latimer), 918 F.2d 136, 137 (10th Cir. 1990).  In this case, Defendants have not demanded, and cannot now timely demand, a jury trial.

Under LCvR 81.4(b), motions to withdraw the reference of a proceeding must be filed within 21 days after service of the summons in an adversary proceeding.  Ally could not be

---

[15]However, current Tenth Circuit authority holds that bankruptcy courts may not conduct a jury trial.  Parks v. Persels And Assoc., LLC (In re Kinderknecht), 2011 WL 841141 (Bankr. D. Kan.  2011) (citing Kaiser Steel Corp. v. Frates (In re Kaiser Steel Corp.), 911 F.2d 380 (10th Cir. 1990)).

bothered to file returns of service, so this Court has no idea when Ally effected service of process on Defendants.  However, the Amended Complaint was filed on July 22, 2015, Hupfer filed her Answer [Doc. 11] on August 24, 2015, and CSI , Fenner, B Fenner and Lennex got around to filing their Answer on October 7, 2015, so it is fair to conclude the time for seeking withdrawal of the reference has passed without such a motion being timely filed.

Accordingly, the only consideration for the Court is Section 157(c)(1), which provides that this Court may hear this proceeding, but must submit proposed findings of fact and conclusions of law to the District Court, so that the District Court can enter a final order or judgment following its *de novo* review.

## CONCLUSION

 ["T]he current bankruptcy system . . . requires the district court to review *de novo* and enter final judgment on any matters that are 'related to' the bankruptcy proceedings, § 157(c)(1), and permits the district court to withdraw from the bankruptcy court any referred case, proceeding, or part thereof, § 157(d)."  Stern, 131 S.Ct. at 2620.  Because the State Law Claims are merely "related to" the bankruptcy proceedings, this Court will issue a report and recommendation to the District Court.  Because Defendants did not timely exercise either a jury trial right or make a timely request for withdrawal of the reference, the Court will exercise jurisdiction over the above-captioned adversary proceeding until such time as a report and recommendation becomes necessary.[16]  Because the Court finds that the proceeding is non-core, the Hupfer Motion and the CSI Motion are GRANTED IN PART, but only as to the finding that the proceeding is non-core.

---

[16]Following the close of briefing on any dispositive motions and/or following trial.

The Hupfer Motion and the CSI Motion also request that the Court dismiss the action, but neither offers authority supporting dismissal and statutorily, this Court is permitted to offer a report and recommendation to the District Court.  Accordingly, the Hupfer Motion and the CSI Motion are DENIED IN PART, such that all requests other than a finding that this matter is non-core are DENIED.

IT IS SO ORDERED.

# # #